IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LEANORD L. GIBBENS, | ) | 4:07CV3246 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DIANE SABATKA-RINE, in her | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 25.) As set forth below, the Motion is granted.

## I. BACKGROUND

Plaintiff Leanord L. Gibbens ("Gibbens") filed his Complaint in this matter on October 10, 2007. (Filing No. 1.) After initial review, Plaintiff filed an Amended Complaint which, liberally construed, alleges that Defendant, as Warden of the institution in which he was incarcerated, failed to protect him from a physical assault. (*Id.*) Defendant filed her Motion for Summary Judgment on February 3, 2009. (Filing No. 25.) Along with her Motion, Defendant also filed an Index of Evidence and Brief in Support. (Filing Nos. 26 and 27.) Despite having more than four months in which to do so, Plaintiff did not file an opposition or any other response to Defendant's Motion. (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party

must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

Defendant submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted any "concise response" to those facts. Further, Defendant submitted evidence which was properly authenticated by affidavit. Plaintiff has not. This matter is deemed fully submitted and the material facts set forth by Defendant in her Brief are "deemed admitted" and are adopted below.

## II.   RELEVANT UNDISPUTED FACTS

1.   At all times relevant to this action, Gibbens was an inmate at the Lincoln Correctional Center ("LCC").

2.   Defendant is, and was at all relevant times, the Warden of the LCC.

3.   When Gibbens originally entered the custody of the Nebraska Department of Correctional Services ("NDCS") in 2000, he indicated that he had enemies within the Nebraska prison system. In particular, he named Inmates Lewis Layman ("Layman") and Kenneth Umbarger, and Curtis Callahan (who was no longer incarcerated) as people with whom he may have a problem.

4.   On November 5, 2000, a caseworker learned that Gibbens had killed the brother-in-law of Inmate Carl Barker ("Barker"), and that Gibbens had stolen from the mother of Inmate Robert Deas ("Deas").

5. Unit Case Worker Robert Klotz ("Klotz") conducted an investigation after learning of the information relating to Barker and Deas. On November 8, 2000, he spoke with Gibbens who stated that he had no problems with any other inmates.

6. After speaking with Barker and Deas, Klotz recommended that Gibbens be placed on protective custody status because a hostile relationship may exist between Gibbens, Barker, and Deas. It was also noted at this time that Layman and Deas are half brothers.

7. Based on the above information, on November 14, 2000, Layman was placed on Gibbens's central monitoring list and on November 21, 2000, Gibbens was involuntarily placed on protective custody status.

8. On December 6, 2001, Barker was transferred out of the LCC.

9. On November 11, 2002, Deas was transferred out of the LCC.

10. On June 1, 2007, Inmate Mitchell Marsh ("Marsh") was working in the dining hall. When Gibbens and the other protective custody inmates came in to eat, Marsh hit Gibbens in the face in the central dining hall. Following the incident, Gibbens stated, "some guy I don't know clocked me."

11. Following the June 1, 2007, incident, Gibbens was treated for a laceration below his right eyebrow. It was noted that he had a red and swollen area at his right temple measuring golf ball size. His laceration was sutured and he made no complaints of other pain.

12. On August 1, 2007, Laymen was placed on Administrative Confinement status due to a fight with other inmates. Gibbens was not involved in this incident.

13. The LCC allows general population inmates to work in the kitchen and dining hall areas where the protective custody inmates are fed, but will not allow a general population inmate to work around a protective custody inmate if there is a known conflict between the two.

14. When inmates are being fed in central dining at the LCC, the general population inmates assigned to work in that area are instructed to stay behind the food line so they are not in direct contact with the protective custody inmates. Also, the general population inmates are closely supervised by correctional officers while they are working.

15. There is a group of inmates at the LCC who call themselves "the Peckerwoods." This group of inmates has been identified by the facility as a security threat group.

16. Prior to the June 1, 2007, incident between Marsh and Gibbens, Defendant had no information that Marsh was involved in the security threat group "the Peckerwoods."

17. Prior to the June 1, 2007, incident between Marsh and Gibbens, Defendant had no information that Marsh posed any threat to Gibbens. If LCC staff had been aware that there was a possible conflict between Marsh and Gibbens, Marsh would not have been allowed to work in the dining hall when Gibbens was present.

(Filing Nos. 26 and 27.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

#### B. Defendant's Motion

Defendant argues that she is entitled to qualified immunity on the individual capacity claims because Plaintiff has not shown the violation of a constitutional right. (Filing No. 26 at CM/ECF pp. 4-8.) Defendant further argues that the official capacity claims against her must also be dismissed because Gibbens has failed to

meet the requirements for injunctive relief. (*Id.* at CM/ECF pp. 9-10.) The court agrees with Defendant on both counts and finds that summary judgment in favor of Defendant is warranted.

### 1.    Qualified Immunity-Individual Capacity Claims

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not

show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

### 2. Deprivation of a Constitutional Right

Liberally construed, Plaintiff alleges that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment through her failure to protect him from assault by another inmate. (Filing No. 1.) The Eighth Amendment generally prohibits cruel and unusual punishment and provides a "right to safe and humane conditions of confinement." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). A successful claim under the Eighth Amendment requires that the plaintiff show "[a] denial of safe and humane conditions" resulting "from an officer's deliberate indifference to a prisoner's safety." *Id.* (quoting *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990)). Deliberate indifference requires "more than mere negligence," but does not require acting "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

To establish a failure-to-protect claim under the Eighth Amendment, a plaintiff must show that the prison official was deliberately indifferent to a "substantial risk of serious harm from other inmates." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Thus, the plaintiff must allege both an "objective component, whether there was substantial risk of harm to the inmate," and a "subjective component, whether the prison official was deliberately indifferent to that risk." *Id.* "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). Again, negligence by a defendant "is not sufficient to establish that he acted with deliberate indifference." *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). Rather, deliberate indifference requires that the defendant "recklessly disregard[] a known, excessive risk of serious harm" to the inmate. *Id.* "Because being subjected to

-7-

assault is not part of the penalty that criminal offenders must pay for their offenses, the eighth amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Young*, 508 F.3d at 871 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), other citations omitted). However, "prison officials do not commit a constitutional violation every time one prisoner attacks another." *Id.* at 872.

Here, Gibbens has not shown that Defendant knew of any risk posed to him by his attacker, nor has he shown that Defendant failed to respond to that unknown risk. While the LCC allows general population inmates to work in the kitchen and serve protective custody inmates, if a known conflict exists between particular inmates, these inmates would not be allowed contact. The undisputed evidence before the court shows that Gibbens informed the officials at the LCC that he should be separated from several inmates while incarcerated at the LCC. Over the course of Gibbens' incarceration, the list of inmates from which Gibbens should be separated grew. However, Marsh was never on the list of inmates from which Gibbens should be separated. Defendant had no actual knowledge that Marsh ever threatened Gibbens or had any relationship to Gibbens, or to any of the inmates from which Gibbens was separated. Defendant simply did not know that Marsh posed a risk to Gibbens. If she had known, Gibbens and Marsh would have been separated. In light of these findings, Gibbens has not established that Defendant violated a constitutional right and there is no need to proceed further. Defendant is entitled to qualified immunity and the claims against her in her individual capacity are dismissed.

### 3. Injunctive Relief-Official Capacity Claims

Gibbens also seeks injunctive relief in the form of a court order requiring the Defendant be permanently enjoined from "subjecting Protective Custody inmates to

General Population inmates." (Filing No. 1 at CM/ECF p. 6.) As set forth by the Eighth Circuit and the Supreme Court:

> An inmate seeking injunctive relief on a failure-to-protect claim must adequately plead a violation of prison officials' duty to protect; moreover "to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. . . . If the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief.

*Smith v. Arkansas Dep't of Corr.*, 103 F.3d 637, 644-45 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). Further, a "prison official[] may defend against a failure-to-protect claim on the basis that they responded reasonably to the known risk of harm." *Id.* at 645 (quotation omitted).

As set forth above, Gibbens has not set forth any evidence that Defendant knew of any risk of harm to Gibbens by Marsh and thus, could not have been deliberately indifferent to that non-existent risk. Defendant took every possible step to protect Plaintiff from all known risks and threats and did not violate the duty to protect him. Because Gibbens has not "come forward with evidence" supporting his claims for injunctive relief, and for the same reasons set forth above, the claims against Defendant in her official capacity are also dismissed.

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (filing no. 25) is granted and Plaintiff's claims against Defendant are dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

July 1, 2009.                    BY THE COURT:


                                 s/ Joseph F. Bataillon
                                 Chief United States District Judge